Good morning, Your Honors. Steve Hubachek, Federal Defender of the Zombie Afflict, Mr. Cano-Medina. Your Honors, it's a fundamental aspect of trial practice that the law comes from the trial court. In this case, there was a request made to the judge to give an instruction so the jury would be able to evaluate the government's evidence of alienage, specifically the fact that they wanted to rely upon the order of deportation as evidence of alienage. The jury was left in a position where they had no real ability to evaluate that evidence because an immigration proceeding is fundamentally different from a criminal prosecution. The burden of proof is different. It's clear and convincing evidence. There is a presumption of alienage that attaches when there's proof of being born outside the United States, and the burden shifts once that presumption attaches. But do you have a case that says the judge should have done that? Your Honor, there isn't such a case. The closest thing is the Marin Cuevas case. And what Marin Cuevas says is that under the circumstances in that case, it wasn't error, really plain error, to give this type of instruction. But that case was a fundamentally different trial than this because they're of two main aspects. Number one, the prosecutor in Marin Cuevas specifically argued to the jury that there was a different burden of proof in the immigration proceeding, clear and convincing, and contrasted it with the different beyond a reasonable doubt standard. Wasn't that discussed in the opening argument, in the opening statement by defense counsel? Your Honor, there was a comment in the closing argument in which defense counsel stated that there was no proof that the immigration judge applied the beyond a reasonable doubt standard. But there wasn't ever, by either party, either the prosecution or the defense, a statement to the jury as to just exactly what the procedural criteria are that are applied in the immigration proceeding. That is what the district court judge needed to do in its role as the provider of law for the jury in order for it to evaluate the evidence that was before it. And it was basically left without that ability based upon the failure to provide that instruction. Now, the district court actually said to the defense counsel, you should have. Counsel? Yes, Your Honor. Judge Gould with a question. I'll just let you know it so you can address it. But what bothers me about Pellant's case here is the idea that in addition to the deportation, the prior deportation order, there's other evidence that would suggest alienage. There's, I think, admissions he made or statements he made. There's also the fact he came across the border in some remote place without papers. So how does your argument fit with that other evidence? Well, Your Honor is correct about all those pieces of evidence. Those are, in fact, in the trial. And my position is this, is that because the jury wasn't properly instructed as to how to evaluate the immigration order evidence, that that's a constitutional issue because it affects the burden of proof beyond a reasonable doubt. So the question I would move to then would be, under the Chapman standard, is this error harmless beyond a reasonable doubt? And there are a couple of reasons why I would suggest that it isn't. If you take, basically there are three different statements. There are two that are taken on the day of the arrest. And then there's a third one that's back in 2001. But if you take the two statements that were made on the day of the arrest plus the remote location, we're talking about out in the desert near Highway 98. And the agent actually testified that it is typical, and this is at page 52 of the excerpt of record, it's typical in these situations for the groups of people who are crossing to be led by a smuggler. So if you were to say, under those circumstances, I'm a United States citizen, when you're caught with a group of individuals crossing in the desert, or getting near a place where typically alien smugglers pick up their, or have their loads picked up, you would effectively be incriminating yourself on an alien smuggling case. So there was an incentive on the part of all the individuals in that group to not say they're a United States citizen or that they had legal rights of being in the United States because that would single them out as being the individual who's possibly the alien smuggler in that case. So you definitely have an incentive not to tell the truth under those circumstances. With respect to the statement in 2001, that was provided by an agent who just did a little forum interview many years before he had no independent recollection. At page 152 of the record, the jury was instructed that in order to evaluate a statement, it's supposed to determine whether or not the defendant made the statement, and it's also supposed to consider the circumstances under which the statement was made. There was absolutely no evidence whatsoever about the circumstances under which that statement was made because the agent honestly said, I just don't remember the interview. All he had was a form so he was able to testify. So basically you've got one constellation. You should argue all that to the jury. Absolutely. You know, the element of the, isn't the element that the government had to prove that he was an alien? Yes, Your Honor. Okay. So the deportation is, it's, the deportation was part of the proof of that. Correct. And as Judge Gould has noted, there was other evidence and you could discredit that evidence or you could even attack the deportation in this proceeding if there was something wrong with it, but that wasn't done. So I just don't, I don't see what the, how the instruction that you had would have made any difference. Well, it would have made a difference because the things that I've just identified are the weaknesses of the other evidence that exists. So if you're applying a Chapman standard and saying, you know, is this error harmless beyond a reasonable doubt, since the jury couldn't properly evaluate the deport evidence. Well, that's where I'm losing you. Why couldn't they? They couldn't because they were never told about the nature of that proceeding. They had no way of knowing whether or not, what burden of proof was applied. They had no way of knowing whether or not there were presumptions that applied. They had no way of knowing whether or not the burden shifted. So they don't have the ability to evaluate that evidence. What does it mean, basically? Because you're basically provided with an order of a judge. And in other contexts where, you know, judicial orders are offered into evidence, the courts give limiting instructions because they realize that judicial orders are difficult for juries to evaluate because judges are decision makers. They make factual findings and so on and so forth. And so it's evidence that could easily be abused. Well, the same thing should apply here in the context of an immigration order. I mean, this is the person that's identified as an immigration judge. The prosecutor stood before the jury and told them that immigration judges don't deport United States citizens. I mean, the government did everything they could to build up that process, talking about the right to appeal, the right to have a lawyer at it. They were trying to make that as compelling as possible. But the jury wasn't given the whole picture because the judge refused to tell them what the burden of proof was, how that procedure actually takes place. And based upon that, with the other weaknesses in the evidence, I don't think that this error could be considered to be harmless beyond a reasonable doubt. If Your Honor doesn't have any other questions, I'll reserve. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Scott Lesiewicz on behalf of the United States. I want to start off by saying that defense counsel, both in opening and in closing, made clear statements that a criminal proceeding is more important than an immigration proceeding and that more has to be demanded. So I was correct when I said it was an opening statement. Correct. I'm quoting now from the excerpt's record, page 21. This was an opening. Defense counsel said, quote, but this today is not an immigration proceeding. You are not going to be asked to decide whether Mr. Cano Medina can stay in the United States or whether he gets deported to Mexico. This is a federal criminal case, and the United States government has accused Mr. Cano Medina of a federal criminal offense. And what this means is that they assume a burden to present you with evidence, the quality and quantity of which is enough to convince you beyond a reasonable doubt that Mr. Cano Medina is guilty. Then in his closing statement, his closing argument, the defendant said, quote, but the problem is this is not an immigration proceeding. This is a federal criminal case, and more has to be demanded, end quote. So there was clear indication by an officer of the court that this is more important than immigration proceeding, that more has to be demanded. There was definitely no statements from the judge that somehow the immigration decision was binding upon them, that somehow they had listened to the immigration judge. And in reality, he gave the model instructions, which are clear that the jury is the one, they are the ones to decide the facts and no one else. Model instruction 3.1 states, it is your duty to weigh and to evaluate all the evidence received in this case, in the case, and in the process to decide the facts. It was clear to them, it was clear from the instructions taken as a whole, as they must be looked at, that the jury is the decider of the facts, not the immigration judge, nobody else. Also, I think there needs to be some clarification about what the evidence was here. First of all, you had defendant's confessions about being a Mexican citizen born in Mexico. You had one in 2001 in the sworn statement, when he was arrested with no documents in a remote desert area over 100 degrees just north of the border. He then confessed again post-Miranda. And also, defense counsel did not want to argue that somehow he was an alien smuggler and therefore he had an incentive to lie about being a United States citizen. What he wanted to do, and this is discussed in the record, is say that somehow the confession was tainted because alien smugglers tell the people they're guiding, presumably he meant one of which was defendant, what to answer. He was not arguing that the defendant was an alien smuggler and had to hide that he was an alien smuggler by saying he was a United States citizen. And the district court found that evidence to be absurd. He excluded it under 403 properly. Defense counsel has never challenged that ruling. And it's important to remember, in terms of harmless air, there was absolutely no evidence in the record that the defendant was anything but a Mexican citizen. But the judge also afforded an opportunity for a proper in-camera hearing that wasn't accepted. So he even gave him a chance outside of the jury to present something. And also outside the presence of government counsel. So it would not have prejudiced them. And the reason is because obviously the defendant was a Mexican citizen. The evidence is overwhelming. I think we understand your position. Yeah. And then also one thing to point out, too, is that their main argument in closing was that the defendant wasn't really deported. He questioned whether the order of removal was even a real document signed by a real immigration judge. And many of the comments by the government in closing were to rebut that. And so I think in total there's no reason to think the jury was misled. That somehow their decision was improper. And I think it's also important to remember that while the orders of removal cannot stand alone, they cannot be the only evidence of alienage, the fact is they are allowed to be used as evidence of alienage. That's clear. Ninth Circuit authority, cases such as Garcia-Villegas hold that. And unless the Court has any other questions, I'll submit it. Thank you. Thank you so much, Your Honor. Judge McCusk, I stand by the first answer that I gave you because none of the items that were quoted by counsel, well, they're all true, but none of them address this dichotomy between the burden of proof at the immigration proceeding and at a criminal proceeding. Well, your argument is that in the Ninth Circuit they should have this instruction. Yes. Yes, it is. And I think that that would be entirely appropriate and consistent with Marin Cuevas. And if I could just, at page 893 of Marin Cuevas, the prosecutor specifically mentioned declaring convincing evidence burden versus reasonable doubt in that case. And the same thing, the defense at page 894 made the same point. And I'm not here today to argue to the Court that the Court should abandon its precedent saying that this evidence can be used. What I'm saying is that jurors are not in a position to evaluate it properly without an instruction explaining to them those procedures. And they really don't even need to use the order themselves because they can actually use the proceedings where the defendant is, or the alien at that time, is actually, you know, asked questions and gives answers. So it's not essential to use the order. But anyway, unless Your Honors have any further questions, I submit. Thank you. Case to start is submitted for decision. We'll hear the next case, which is United States v. Urena.
judges: McCuskey, Schroeder, Gould